33 F.3d 56
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles J. DWIGANS and Patricia A. Dwigans, Plaintiffs-Appellants,
v.
ASSOCIATED DRY GOODS CORPORATION, doing business as L.S.
Ayers, a subsidiary of the May Department Stores
Company, Defendant-Appellee.
 No. 93-3382.
 United States Court of Appeals, Seventh Circuit.
 Argued May 18, 1994.
Decided Aug. 26, 1994.
 
 Before WOOD, Jr., MANION and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Charles Dwigans was a full time employee of the L.S. Ayres Company from 1958 until 1989. During that time, he occupied several different positions in an Ayres warehouse in Indianapolis Indiana. In 1989, Ayres decided to reduce its workforce and to turn over some of its warehouse duties to an independent contractor. As part of that reorganization, Dwigans was offered and, in April 1989 at the age of 56, accepted an early retirement package. After he retired, however, he did not receive all of the benefits that he understood were to be part of that package. He and his wife Patricia Dwigans brought this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621-634. They also brought several state law claims.
 
 
 2
 The Dwigans alleged that Ayres management had purposely misled them regarding the benefits they would receive. Ayres' goal, they contended, was to induce Dwigans' retirement, and its motivation for doing so was Dwigans' age. Specifically, the dispute centers on a May 23, 1989 letter to Dwigans, which was signed by Kathy Young of the Ayres' benefits office and outlined the benefits that Dwigans was to receive in this way:
 
 Pension estimates:
 Monthly single life annuity--$299.09
 Lump Sum pay out--$34,000.00
 
 3
 Although Ayres intended that Dwigans would receive his pension in only one of those two forms, Dwigans believed that he was to receive both the lump sum and the monthly pension payments. His contention that Ayres deliberately misled him forms the basis of his ADEA claim.
 
 
 4
 The district court granted Ayres' motion for summary judgment on the Dwigans' state law claims, but denied summary judgment on their ADEA claim. That claim subsequently was tried before a jury, which found that the ADEA had not been violated. Dwigans now appeals, contesting several of the district court's evidentiary rulings and its instruction of the jury. Because all of the rulings that the Dwigans contest were harmless even if erroneous, we affirm the judgment of the district court.
 
 I.
 
 5
 The Dwigans first challenge the district court's decision to exclude the testimony of four witnesses, Robert Mullen, Richard Irwin, Rene Radford, and James Stumpf. Each would have provided testimony pertinent, in the Dwigans' view, to the issue of discriminatory intent. Robert Mullen would have testified that he was told (by the same person who supervised Dwigans' department) that he would not be reassigned to a new position as part of the reorganization because he was too old. Richard Irwin would have testified that:
 
 
 6
 In June, 1988, I was told my job as a director of Visual Merchandise & Promotion in the Production Display Department was being eliminated. I was called by Personnel, who made me a retirement offer of the money I had in the credit union and retirement fund, plus severance pay, and an additional amount, based on one week's salary for each years [sic] service, in a lump sum. I was told that if I didn't take this it would not be offered again; that my job 'could' be eliminated; and if it were, I wouldn't get this offer. When they said that my job 'could' be eliminated, I know they meant it would be eliminated if I didn't take the offer.
 
 
 7
 I also was told in June, 1988, I would have to sign a form that this offer would not be made again. I felt very intimidated and threatened by the way the form was worded. I didn't want to leave.
 
 
 8
 I felt I was forced out because of my age.
 
 
 9
 (Irwin Aff. at 1.) Rene Radford would have testified that the person in charge of the warehouse had told her that "he was using supervisory positions as a training ground for college kids for management and supervisory positions, and that as a consequence some of the managers and supervisors who had already been there would not be promoted." (Aug. 31, 1993 Tr. at 181.) Finally, James Stumpf would have testified that he was moved from a salaried to an hourly position and replaced by a younger employee. (Sept. 1, 1993 Tr. at 511-12.)
 
 
 10
 The Dwigans also challenge the district court's decision to admit two of Ayres' exhibits. The first included classified advertisements listing warehouse and shipping jobs in the Indianapolis area between June 1989 and June 1990. Ayres offered these ads in support of its argument that Dwigans had failed to mitigate his damages. The second exhibit that the Dwigans challenge was the form they had used to request that they receive a lump sum payout of the pension rather than continuing to receive the monthly payments. The Dwigans argue that this exhibit was irrelevant.
 
 
 11
 Finally, the Dwigans challenge several of the court's rulings regarding the jury instructions. First, they object to the instruction that was given regarding Dwigans' exercise of due diligence in mitigating his damages. In addition to challenging the particular content of this instruction, the Dwigans argue that the issue of mitigation should not have been presented to the jury because, as a matter of law, Ayres had not presented evidence sufficient to establish that Dwigans had failed to exercise due diligence. Second, the Dwigans contest the district court's decision to reject three of their own proffered instructions. Two of these pertained to the factors that should be considered in determining whether the plaintiff exercised due diligence in mitigating his damages, and the third stated:
 
 
 12
 The enhanced retirement benefits offered to Plaintiff by Defendant are all benefits which the Defendant offered to Plaintiff in exchange for Plaintiff's early retirement. They do not include benefits already earned by Plaintiff.
 
 
 13
 The last instruction was necessary, according to the Dwigans, to insure that the jury understood the definition of "enhanced benefit package."
 
 II.
 
 14
 We need not specifically address any of these arguments because, even if erroneous, all of the challenged rulings were harmless. As the district court noted, Dwigans' ADEA claim was quite unusual. In order to state a claim under the ADEA, plaintiffs must show, inter alia, that they suffered a "materially adverse employment action." Flaherty v. Gas Research Inst., No. 93-3651, slip op. at 9-10 (7th Cir. July 28, 1994); Kralman v. Illinois Dept. of Veterans' Affairs, 23 F.3d 150, 153 & n. 2 (7th Cir.1994). Early retirement in response to an incentive package does not ordinarily violate the ADEA, even though the program is aimed solely at older employees, because it does not amount to an adverse employment action. Henn v. National Geographic Soc., 819 F.2d 824, 828 (7th Cir.), cert. denied, 484 U.S. 964 (1987). An exception to that general rule may arise, however, if the retirement was not truly "voluntary." Id. Although we have not had much occasion to explore the parameters of such a claim, we have noted that voluntariness would come into question if the decision was induced through fraud, as the Dwigans have alleged here. Id.
 
 
 15
 At least theoretically, then, an employee who had accepted an early retirement package could establish an ADEA violation if he could show that his acceptance was not truly voluntary because it was induced through fraud. Notably, the question of whether the employer acted with a discriminatory motive, often the main focus of ADEA cases, would not be an issue in this unusual type of ADEA action. There is no question that the aim of an early retirement incentive program is to encourage older employees to leave. That element of the plaintiffs' claim is not therefore at issue.[1]
 
 
 16
 Thus, as the district court noted (see August 30, 1993 Tr. at 105-06), the issue at Dwigans' trial was quite narrow: Did Ayres deliberately mislead the Dwigans as to the nature of the retirement benefits they would receive? In the absence of such proof, the Dwigans would lose, regardless of any evidence that might pertain to issues such as discriminatory motive, which was not at issue in the case. Because none of the challenged evidentiary rulings pertained to the issue of fraud, none of them would have affected the jury's evaluation of that issue, and so none of them would have changed the outcome of the trial. The same is of course true for the instructions pertaining to mitigation of damages. Not having found Ayres liable, the jury never reached the issue of damages. The evidentiary rulings and instructions pertaining to damages were therefore completely without impact.
 
 III.
 
 17
 The judgment of the district court is therefore AFFIRMED.
 
 
 
 [1]
 It is of course possible that an employer could use an early retirement incentive program to get rid of a particular older employee for some reason other than his or her age, but Ayres has made no such assertion here